No. 37,308

Charles H. Sargent, *Appellant*, v. Ray Hainke and Ruth J. Hainke, doing business as The Ray Hainke Manufacturing Company, and Ray Hainke, *Appellees*.

(203 P. 2d 220)

Opinion filed March 5, 1949.

*Ralph H. Noah,* of Beloit, argued the cause and was on the brief for the appellant.

*J. F. Bell,* of Smith Center, was on the brief for the appellees.

The opinion of the court was delivered by

Price, J.: This is an appeal from a decision of the lower court sustaining a demurrer to plaintiff's evidence and overruling his motion for a new trial in an action brought by him to recover commissions on the sales of power mowing machines manufactured by defendants.

The defendant, Ray Hainke, owned and operated a small manufacturing plant at Kensington, Kan., which manufactured and assembled power lawn mowers. In 1942 the plant had to close down due to wartime shortage of materials. In September, 1944, defendant received word from governmental sources that he would be permitted to reopen his factory as soon as men and materials were available. Very shortly thereafter plaintiff and defendant, who had known each other for some time, met on the street and during their conversation entered into an oral agreement whereby plaintiff was to solicit orders for the sale of defendant's machines on an agreed commission basis, the terms of the latter not being here in dispute. However, materials were scarce and the factory did not begin operation until February, 1945. Plaintiff solicited a large number of orders and when prompt delivery was not made he filed

this action on May 12, 1945, to recover the commissions on all orders so taken by him and upon which delivery had not been made.

The petition alleged the oral agreement to be that—

". . . The orders to be taken and the machines to be delivered as rapidly as they could be manufactured by the defendants, and upon delivery and collection therefor the defendants agreed to pay the plaintiff all in excess of $90.00 received on each complete machine and all in excess of $68.50 on machines sold without motors. The terms of this employment were accepted by the plaintiff and the defendants furnished to the plaintiff order books upon which to take orders."

and further alleged that plaintiff, relying on this agreement of employment, went to work and started taking orders for machines; that delivery had been made on twenty-two orders taken by him; that at the oral request of defenadnts plaintiff withheld and did not turn in to the office of defendants a great many orders taken by him; that all purchasers on orders taken by him and upon which delivery had not been made were willing, able and anxious to buy said machines at the price agreed upon; that although plaintiff had requested defendants to deliver said machines and pay the plaintiff his commissions thereon, the defendants willfully, wantonly and wrongfully refused to do so but instead delivered machines manufactured by them to other purchasers for the full list price to avoid paying plaintiff his commissions, and that defendants failed, neglected and refused to deliver any machines to the purchasers listed in Exhibits A, B, and C attached to his petition. The prayer was for judgment against the defendants for the total amount of the commissions allegedly due plaintiff for the sale of the machines listed in Exhibits A, B, and C, they being a list of purchasers on orders taken by plaintiff and upon which delivery had not been made at the time of filing suit.

The answer of defendant, Ray Hainke, filed November 28, 1945, admitted the oral agreement set out in plaintiff's petition and that delivery had been made on twenty-two orders taken by plaintiff, and denied generally all other allegations of plaintiff's petition.

No reference is made to the answer filed by defendant Ruth J. Hainke, wife of Ray Hainke, for the reason that the action was later dismissed as to her and she is no longer a party to this lawsuit.

On February 16, 1946, defendant filed his amended answer, in which he alleged that on or about February 1, 1945, he was able to open his plant; that materials for the construction of his mowers

were scarce and could be obtained only in very limited amounts depending upon his priority rating; that all of these facts were well known by plaintiff at all times; that at the time the agreement was entered into between plaintiff and him he told plaintiff that his output would be very limited until such time as materials could be purchased; that it was agreed between the parties that no order would be binding or valid unless the same was accepted by defendant and that plaintiff would receive a commission only on such orders as were accepted and approved by defendant; further, that it was expressly understood between the parties that defendant was to have the express right to accept or refuse any order received for said machines; that this was the only protection or means by which defendant could continue said business under the extreme restrictions and limitations which then existed in the procurement of essential materials; that plaintiff was not authorized to take any order except by the use of an order blank (copy of which was attached to the amended answer as Exhibit 1) which provided that each order was subject to acceptance by the seller. That of the list of orders in Exhibit A attached to plaintiff's petition defendant had made delivery on fourteen of such orders, the commissions on which amounted to $521.22; that defendant had tendered to plaintiff said sum of $521.22 but that plaintiff had refused to accept the same and that said fourteen orders were the only orders listed in said Exhibit A which had been accepted by defendant, and defendant offered to confess judgment in the amount of $521.22.

A motion to make the amended answer more definite and certain was sustained and on July 18, 1946, defendant filed an amendment to the amended answer, in which it was set out that during the entire year 1945, 891 machines were made and sold; that from February, 1945 to May 12, 1945, the date plaintiff filed suit, defendant received orders for 548 machines and that of such number orders for 354 were accepted and filled by defendant.

On August 1, 1946, plaintiff filed his reply in which he alleged that he showed his unfilled orders to defendant who said that they were "all right," but that due to lack of filing space in defendant's office he orally requested plaintiff to retain the orders in his possession until machines could be manufactured; that as between plaintiff and defendant, the provision for acceptance of the orders was void and not binding upon either of them and was only for the protection of the defendant for claims made by the purchasers themselves.

At the time the case came on for trial before a jury in December, 1947, it was stipulated between the parties that Exhibit A attached to the petition was a correct list of all orders turned in by plaintiff and not filled by defendant prior to the time suit was filed; that after the filing of suit delivery was made by defendant on fourteen machines included in the list set out in Exhibit A and that the sum of $521.22 as commissions on the sale of said fourteen machines so delivered after the filing of suit was tendered into court by defendant.

The substance of the testimony offered in behalf of the plaintiff was as follows: The bookkeeper of the defendant's company testified that they filled orders as fast as they could; that when plaintiff started to work there were three other salesmen; that a total of 891 machines was sold and delivered in the year 1945; that deliveries were made to various dealers in Kansas, Oklahoma and Nebraska; that plaintiff got one machine in Februry, 1945, eighteen in March, and five in April and May; that nine deliveries of orders taken by plaintiff were made after suit was commenced and the commissions on them tendered into court; that the demand for the machines far exceeded the output with the result that there was a scramble by the salesmen and dealers to get their orders filled; that the plaintiff had a backlog of unfilled orders on account of the company's attempt more or less to prorate the output among the salesmen, dealers and customers; and that she knew plaintiff had been refused delivery on numerous occasions just as other salesmen also had been refused.

Another salesman, a relative of defendant, testified that in many instances he did not use the prescribed order blanks; that he would just pay the defendant's company the net price of a machine and then go out and sell it; that on occasions he would "accumulate" as many as ten machines in this manner and then sell them as he had time; that material was hard to obtain; that "they were all wanting machines" and that defendant's company could not supply the demand.

Plaintiff testified as to the meeting between defendant and him on the street in September, 1944; as to their discussion concerning his going to work as a salesman for defendant; and—

"Q. Well, what all was said there now that day in reference to the orders or about the price and the orders and that sort of thing? A. Well, we went on then and discussed that and I said that I believed that, mentioned about,

he said that 'now I have got to have a lot of money invested in material and these motors and stuff and if you can take care of your expenses until along towards spring,' and he said, 'We, will make these orders to be filled on or before April 1st,' and he said, 'That will give me time to turn some of these machines and we will have more money and we could settle up around that date, April first,' and I said, 'Well, that is fine but' I said, 'what about a clause here,' 'it says that you could refuse to fill these orders,' and he said, 'well that don't make any difference between you and I, you just go on and get orders and that will be all right.' And I said, 'Well, I guess that will cover everything, and I will in a week or so, I will have things around so I can go on the road.' So I started out.

"Q. Did he say anything about the order of filling the orders taken? A. I don't know, I don't know just what you mean.

"Q. Did he say anything in reference to whose orders would be filled first out of the manufacturing that they had? A. Why he said, yes, he promised me, he said, 'your orders will be filled first,' and that they could be taken care of and we could surely settle by April first of the coming spring."

that he started to work immediately and sometime after the first of the year he mentioned to defendant that he had nearly one hundred orders, whereupon defendant said, ". . . you can go ahead and take fifty more orders;" that they later agreed that he was to retain his orders and not file them in defendant's office at the rate of more than twenty at a time because they might get lost or misplaced; that by the latter part of March he told defendant it was about time they settled up; that he didn't think defendant ever told him to stop taking orders and that on account of non-delivery on orders already taken by him he quit on April first and considered his part of the agreement ended as of then; that in April and up to the 10th of May, 1945, he had a number of conversations with Otto Hainke, who was in charge of the business in the absence of the defendant, and was told that he couldn't have any more machines; that they had too many unfilled orders already, and that finally he left all of his unfilled orders with the bookkeeper on or about May 10th, two days before he filed this action.

The defendant was called as a witness by plaintiff and he testified that the only objection he had to plaintiff's orders was that he didn't have enough material to fill all of them; that on these orders which had been accepted and filled he had paid plaintiff his commissions before payment for the machines had been received and that quite a number of orders from jobbers had been filled directly.

In sustaining defendant's demurrer to plaintiff's evidence the court stated:

"It isn't inadvertence, it is a plain, it can't be inadvertence any more than this failure to prove that these machines were manufactured. It is certainly a violent presumption to claim that this one agent was entitled to delivery of all of the orders that he took and nobody else was, had the same right that he has. If he had this right, they all had the same right; well then, there must be a proration of filling the orders."

Plaintiff's motion for a new trial was overruled and this appeal followed, his specifications of error being that the court erred in sustaining the demurrer and in overruling the motion for new trial.

Appellant contends that this is a simple case involving an agreement of employment between plaintiff and defendant, performance on the part of the plaintiff and refusal by defendant; that plaintiff, having taken the orders for the machines, is entitled to his commissions and that the question as to the terms of the agreement was a question of fact to be determined by the jury.

The trouble with that argument is that here the plaintiff's suit is based on a special agreement set out in his petition and he has thus limited his right of recovery to a breach by the defendant of the agreement so pleaded. By the very terms of such agreement he was to be paid commissions when the orders were accepted by the defendant, delivery made and payment received. Use of the order blanks was a part of the agreement of employment and they expressly provided that the orders were "subject to acceptance by the Seller" and that "This order is this day accepted subject to approval by the Seller." Nowhere in the petition is it alleged that plaintiff was to have the exclusive right to all of defendant's machines as fast as they were manufactured or that he was entitled to commissions as soon as he took the orders. Commissions were to be paid him upon acceptance of the orders by the defendant, delivery of the machines and payment therefor.

Considerable evidence was introduced, apparently without objection, which expanded the agreement as pleaded and which had to do with the operations of the plant for the entire year 1945. However, the pertinent matters to be considered and determined are those which took place prior to May 12, 1945, the date suit was filed. Plaintiff cannot create his right of action after suit is brought. As of that date he had been paid his full commissions on all machines sold by him upon which delivery had been made. His suit was for commissions on those orders which were still unfilled and not paid for. After suit was filed defendant made delivery

on a number of those orders and tendered the commissions thereon into court. In passing on defendant's demurrer the court was bound to consider only the question whether plaintiff's evidence made out a prima facie case as to the issues set forth in the petition. He must recover, if at all, upon the contract alleged in his petition. Where the parties make a special agreement by the terms of which plaintiff would be entitled to a commission only in a certain event, he must show that the event has occurred. (*Karr v. Moffet,* 105 Kan. 692, 185 Pac. 890. Rehearing 106 Kan. 379, 187 Pac. 683; *Wenkeimer v. Hager,* 129 Kan. 518, 283 Pac. 489.)

We think the trial court was correct in holding that plaintiff's evidence fell short of the proof required to make out a prima facie case under the allegations of his petition, and the judgment is affirmed.

ARN, J., not participating.